*Cates & Lindsey* for appellant.

---

## Bohannon's heirs *vs* Sthreshley's Ex'ors.

CHANCERY.

ERROR TO THE WOODFORD CIRCUIT.

*Case* 137.

*Trusts and trustees. Limitation.*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

June 1.

IN February, 1817, *William Bohannon*, son-in-law of *Thomas Sthreshley*, being pressed by debts and wishing to sell some of his slaves, made to the said *Sthreshley* a bill of sale of three of his slaves (*Mira, Jordan and Laura,*) for the recited considration of $1034, which, as we believe from all the facts, was actually paid by *Sthreshley* to *Bohannon*, and to the use of his creditors. On receiving the bill of sale, *Sthreshley* handed it to his daughter, *Mrs. Bohannon*, with an injunction to keep it safely and an assurance that it would secure the slaves to herself and her children. Her husband and herself enjoyed the continued possession and use of those slaves until his death in the winter of 1818. *Sthreshley* having administered on his estate, and become guardian for his infant children, hired out the slaves and appropriated the proceeds to the payment of the intestate's debts and the maintenance of the wards and the widow, until 1822, when he made a settlement with the proper County Court, and refused to make distribution then of the slaves, on the avowed ground that the adult heirs ought not then to take any portion of them, but that he should retain them for the use of his wards during their minority. After that settlement the widow seems to have retained *Mira* without question as to her right, and *Sthreshley* kept *Jordan and Laura*, frequently declaring that

The case stated.

BOHANNON'S H'S
vs
STHRESHLEY'S
EX'ORS.

they were finally to be distributed among *Bohannon's* heirs, and used in the mean time for the benefit of his wards; but sometimes also declaring that he had a right to dispose of them as he might think fit. He died in 1829, and by his will, which did not mention any of those slaves, he devised his estate to be equally distributed among five stocks of descendants, the heirs of *Bohannon* constituting one of those stocks.

In 1831, the widow of *Bohannon* being dead, their children filed a bill in chancery against *Sthreshley's* executors, praying for a decree for *Jordan and Laura* and her increase. The executors resisted the decree on three grounds—1st, that neither the complainants nor their mother ever had a valid title to those slaves; 2d, that if they had, it had been lost by their election to claim under the will; and 3d, that their claim was barred by lapse of time.

The Circuit Court dismissed the bill, and we are now to revise that decree.

The father-in-law purchased of the son-in-law, (who was embarrassed) sundry slaves; took a bill of sale, gave it to his daughter, enjoining its safe keeping and assuring her that it would secure the slaves to herself and children; the slaves remain with the son-in-law till his death; the father-in-law administers, leaves part of the slaves in possession of the daughter, hires out others for the benefit of the infant children of son-in-law, for whom he was guardian; dies and devises his estate to five stocks, this daughter being one, saying nothing of those slaves: held those slaves were the property of the daughter's children (she being dead) and held by the father-in-law during his life as their trustee.

1. Our deduction from all the facts is, that *Sthreshley* did in fact give the slaves to *Mrs. Bohannon*, or to her and her children, and delivered to her the bill of sale for securing that gift. And there is strong evidence tending to prove that the gift of the slaves was *only the* execution of a promise to indemnify her for the price of a tract of land which he had settled her upon and verbally given to her, but afterwards sold for his own benefit.

We are also of the opinion that *Sthreshley* obtained the possession of *Jordan* and *Laura* in his fiducial character as administrator of *Bohannon*, and guardian of his infant children, and that he continued to retain them as guardian, never satisfactorily manifesting an intention to appropriate them to his own use as his own property, even if such a determination could have affected the right of the children of *Mrs. Bohannon*.

Limitation cannot avail either to the person himself or his representatives, who obtains and holds possession of property as trustee, but from

2. As the will does not mention these slaves, and there is no satisfactory evidence tending to prove that the testator considered or claimed them as his own, or intended to embrace them in the general devise of all his estate, no sufficient ground has been established for applying the equitable doctrine of election.

3d. And, as it appears to us from what we consider a decisive preponderance of facts, that *Thomas Sthreshley* obtained and held *Jordan* and *Laura* as a fiduciary, in trust for the benefit of *Bohannon's* children, the lapse of time cannot operate as a bar either in equity or law, to the successful assertion of their right to them as against his representatives, this suit having been brought within about two years after his death.

Had there been conclusive proof that he had, in fact, held the slaves avowedly and notoriously in his own beneficial right, and adversely to the title of his said grand children, the lapse of more than five years from the commencement and announcement of such an adversary claim and possession, might (so far as there was no saving disability) have been available to his executors as a bar to any suit instituted after that limitation. But there is no such proof; and, therefore, time is unavailing to the executors representing a trustee whose trust should be presumed to have been subsisting at his death.

It is, therefore, our opinion that the bill should be maintained against the representatives of the trustee, *Sthreshley*, but subject to all equities as to compensation for maintaining his wards, concerning which, there may be a proper enquiry hereafter.

Decree reversed and cause remanded.

*Morehead & Reed* for plaintiffs; *Robinson & Johnson* for defendants.